IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| EUGENE E. HOUCHINS, III, TRUSTEE OF THE MATTHEW KIRBY FAMILY INSURANCE TRUST, ON BEHALF OF THE MATTHEW KIRBY FAMILY INSURANCE TRUST, <br><br> Plaintiff, <br><br> v. <br><br> UNITED OF OMAHA LIFE INSURANCE COMPANY, MUTUAL OF OMAHA INSURANCE COMPANY, and ESTATE OF MATTHEW KIRBY, <br><br> Defendants. | Case No. 2:21-cv-04083-NKL |

**ORDER**

Plaintiff Eugene E. Houchins, III, Trustee (the "Trustee") of the Matthew Kirby Family Insurance Trust, on behalf of the Matthew Kirby Family Insurance Trust (the "Trust") and Defendant United of Omaha Life Insurance Company, Mutual of Omaha Insurance Company (together, "Omaha") have submitted cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 regarding the damages available under Count V of the Complaint, which alleges negligent misrepresentation. Docs. 32 and 34. For the reasons discussed below, the Trustee's motion for summary judgment is denied and Omaha's motion for summary judgment is granted.

I. FACTUAL BACKGROUND

For the purposes of their cross-motions, the parties have stipulated to the following facts:

On September 19, 2014, Omaha issued a life insurance policy to Matthew Kirby ("Kirby"),

a Missouri resident, insuring his life with a face amount of $800,000, policy number UA9535056 (the "Policy").

### a. The Collateral Assignment

On January 31 2015, Kirby entered into a Collateral Assignment of Life Insurance Policy (the "Collateral Assignment") with a bank (the "Bank"). The Collateral Assignment pledged the Policy as collateral to the Bank in exchange for loaning Kirby $400,000.00. On February 3, 2015, Omaha sent a letter to the Bank acknowledging the Collateral Assignment and stating that it had been recorded.

### b. The Primary Beneficiaries and the Trustee

On April 11, 2019, Kirby executed a Change of Beneficiary Form naming Noah Kirby as an irrevocable primary beneficiary.

The Trust was created by Kirby, as grantor, on April 17, 2019 as an irrevocable trust. Also on April 17, 2019, Kirby executed a contract and related documents for sale of the Policy to the Trust (the "Contract").

Kirby did not identify the Collateral Assignment during the process of selling the Policy to the Trust.

On April 19, 2019, Kirby executed a Change of Ownership form, transferring ownership of the Policy to the Trust. Kirby also executed a Change of Beneficiary form designating the Trust as the sole primary beneficiary of the Policy. On May 8, 2019, Omaha sent a letter stating that the Change of Ownership form was not effective because it had not been signed by the primary beneficiary, Noah Kirby. The next day, May 9, 2019, Kirby and Noah Kirby executed a Change of Ownership Form transferring ownership of the Policy to the Trust. In a letter dated May 15, 2019, Omaha confirmed that ownership of the Policy had been transferred to the Trust effective

May 9, 2019 and that the beneficiary had been changed to the Trust.

On May 17, 2019, the Trustee and his office personnel spoke with an Omaha representative on the telephone. The Trustee's employee asked about any encumbrances on the Policy. The Omaha representative stated incorrectly that there were none.

On May 21, 2019, the Trust issued a check to Kirby for the total amount of $420,000.00, which represented payment for Kirby's transfer of ownership of the Policy and also a separate American Family life insurance policy in the amount of $250,000.00 that is not at issue. Of the $420,000 total paid to Kirby, $320,000 was paid to Kirby for the Policy.

In September 2019, Houchins made an Accelerated Death Benefit claim pursuant to the Policy's terminal illness rider. On October 22, 2019, Omaha approved the claim for accelerated death benefits. In the same letter, Omaha noted the existence of the Collateral Assignment.

Upon learning of the Collateral Assignment, the Trustee attempted to get the Bank to release the Collateral Assignment, but it never did so.

Kirby passed away on June 10, 2020. Defendant Estate of Matthew Kirby (the "Estate") is an involuntary estate lawfully created in Howard County, Missouri following the death of Kirby.

On June 30, 2020, the Bank submitted a claim for life insurance benefits under the Policy.

On July 5, 2020, the Trustee submitted a claim for life insurance benefits under the Policy.

On July 22, 2020, the Bank sent a letter stating that the payoff for the Collateral Assignment as of that date was $401,433.68, and it increased by $60.76 per day. The letter also stated that the Collateral Assignment was secured by $400,000.00 of the Policy proceeds and that "$400,000.00 will fully satisfy the collateral assignment."

On July 24, 2020, Omaha sent a check to the Bank for the total amount of $401,676.72, and a check to the Trust for the total amount of $401,663.38.

On August 18, 2020, the Bank sent a check for $1,676.72 back to Omaha, stating that the Collateral Assignment only allowed it to retain $400,000.00. On October 28, 2020, Omaha sent a check to the Trust for the $1,676.72 that the Bank had returned to Omaha. Thus, in total, Omaha paid the Trust $403,340.01 in connection with the Policy.

## II. PROCEDURAL BACKGROUND

The Trustee filed this lawsuit on April 15, 2021. Although the Estate originally was a defendant in the action, the Trustee and the Estate have since settled their dispute. Doc. 30.

Count V of the Complaint, which alleges negligent misrepresentation, is the only count at issue upon the cross-motions for summary judgment. The parties have stipulated that Missouri law applies to Count V.

## III. STANDARD

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court must draw "all justifiable inferences" in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## IV. DISCUSSION

The parties seek a ruling on the proper measure of damages available for negligent misrepresentation claims under Missouri law. While the parties purport to agree that pecuniary loss is the proper measure of damages for negligent representation, they do not agree as to what that means in this case.

Missouri law on the proper measure of damages for negligent misrepresentation—as articulated by both Missouri state courts and the Eighth Circuit—is clear: "the damages

recoverable for a negligent misrepresentation *do not include the benefit of the plaintiff's contract with the defendant.*" *Jenkins v. KLT, Inc.*, 308 F.3d 850, 858 (8th Cir. 2002) (emphasis in original, quoting *Frame v. Boatmen's Bank of Concord Vill.,* 824 S.W.2d 491, 496 (Mo.Ct.App.1992); Restatement (Second) of Torts § 552B (1977)); *see also Veazie-Gallant v. Brown*, 620 S.W.3d 641, 654 (2021) ("In cases of negligent misrepresentation, damages compensate the plaintiff for pecuniary loss: the difference in value between the purchase price and the value of the transaction or loss suffered because of the plaintiff's reliance on the misrepresentation."); *Jefferson v. Am. Fin. Grp., Inc.*, 163 S.W.3d 485, 489–90 (Mo. Ct. App. 2005) ("In a breach of fiduciary duty action like in an action for negligent misrepresentation where a plaintiff's tort action is based on the defendant's negligent communications, the plaintiff may recover damages necessary to compensate the plaintiff for the pecuniary loss to her of which the misrepresentation is a legal cause." (citing *Frame,* 824 S.W.2d at 495–96)); *Frame,* 824 S.W.2d at 495–96 ("While benefit-of-the-bargain damages are available for fraudulent misrepresentation, the Restatement propounds several policy reasons for limiting damage for a negligent misrepresentation. . . . We see no need to expand the damages allowed for negligent misrepresentation beyond those delineated in the Restatement and thus allow recovery for consequential damages." (citing Restatement (Second) of Torts Section 552 comment b (1977))); *Hartford Acc. & Indem. Co. v. Contico Int'l, Inc.*, 901 S.W.2d 210, 212–13 (Mo. Ct. App. 1995) ("(1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including (a) the difference between the value of what he has received in the transaction and its purchase price or other value for it; and (b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation. (2) the damages recoverable for a negligent misrepresentation do not include the benefit of the

5

plaintiff's contract with the defendant."); *Franklin v. Pinnacle Ent., Inc.*, 1 F. Supp. 3d 979, 993 (E.D. Mo. 2014) ("Missouri law precludes plaintiffs from seeking benefit of the bargain damages for negligent misrepresentation." (citing *Hartford,* 901 S.W.2d at 213; *Frame,* 824 S.W.2d at 496–97)); *Chariton Vet Supply, Inc. v. Moberly Motor Co.*, No. 2:08CV47MLM, 2009 WL 1011500, at *4 (E.D. Mo. Apr. 15, 2009) ("[D]amages recoverable for negligent misrepresentation are: those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including (a) the difference between the value of what he has received in the transaction and its purchase price or other value for it; and (b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation." (citing *Hartford,* 901 S.W.2d at 212)).

The principle that damages for negligent misrepresentation are limited to pecuniary damages has been applied in a myriad of cases. *See Landmark Infrastructure Holding Co. LLC v. R.E.D. Invs., LLC*, No. 2:15-CV-04064-NKL, 2018 WL 2013039, at *2 (W.D. Mo. Apr. 30, 2018) (noting that defendant was entitled to "recover different damages on the two theories of the case on which it succeeded," as it could recover expected profits on its claim for breach of contract but "could not recover its expected profits on the negligent misrepresentation claim"), *aff'd,* 933 F.3d 906 (8th Cir. 2019); *H&R Block E. Enterprises, Inc. v. Sanks*, No. 16-00206-CV-W-GAF, 2017 WL 4570803, at *4 (W.D. Mo. June 6, 2017) (noting that "Missouri also follows the 'pecuniary loss rule' for damages related to negligent misrepresentation, which allows recovery of out-of-pocket losses by a plaintiff," a distinct form of damages from those allowed for fraud or breach of contract, although the damages would overlap to some degree (citing *Frame*, 824 S.W. 2d at 495–96)); *Franklin*, 1 F. Supp. 3d at 993 ("Plaintiffs do not allege that they incurred any pecuniary loss through their reliance on the alleged negligent misrepresentations. As a result, plaintiffs cannot

establish the fifth element of the prima facie case of negligent misrepresentation, and defendant is entitled to summary judgment."); *Chariton*, 2009 WL 1011500, at *4 (holding that plaintiff was not entitled to recover more than its pecuniary loss).

The question is how the principle that only pecuniary damages are available for negligent misrepresentation applies to this case. The Trustee's position is that the Trust should be able to recover from Omaha the difference between the value of the Policy with the encumbrance ($403,340.01) and the value the Policy would have had if Omaha's misrepresentation concerning the lack of any encumbrance on the Policy had been true ($800,000)—that is, damages of nearly $400,000. Omaha's position is that the Trust's damages are limited to the difference between the amount it paid for the interest in the Policy ($320,000) and the actual value of the Policy ($403,340.01), and because the Trust did not actually lose any money, but rather gained more than $80,000, the Trust has no damages.

The Trustee cites *Veazie-Gallant* in support of its argument that the Trust is entitled to the nearly $400,000 more that it would have received if Omaha had not erred in saying that there was no encumbrance on the Policy, insisting that pecuniary loss means the difference between the value of the asset if Omaha's representation had been true and the actual value of the asset.

In *Veazie-Gallant*, the Missouri Supreme Court affirmed the trial court's conclusion that a home purchaser "could recover her pecuniary loss from the seller's defective performance." *Veazie-Gallant*, 620 S.W.3d at 654. The pecuniary loss was the difference between what the purchaser had paid for the house ($220,000) and the value the purchaser actually received in reliance upon the seller's negligent misrepresentation ($174,500). *Id.* In other words, the purchaser had paid more money than the value ultimately received. Thus, while *Veazie* reaffirms the principle that a plaintiff asserting negligent misrepresentation is entitled to recover for actual

7

loss, it does not suggest that such a plaintiff is entitled to recover for expected profits that it did not reap as a result of the misrepresentation.

Both the Missouri appellate court and the Eighth Circuit have expressly rejected efforts to procure expected profits, as opposed to actual losses, as damages for negligent misrepresentation. In *Frame*, a bank's failure to make a promised loan to the plaintiff resulted in the plaintiff's losing not only his earnest money deposit, but also alleged opportunities to accrue profits on a planned real estate purchase. *Frame*, 824 S.W.2d at 495. The Missouri Court of Appeals held that plaintiff was entitled to the amount of the lost earnest money deposit, and no more. *Id.* at 495-96.

In *Jenkins*, the plaintiff sought the value of allegedly promised incentive and severance awards as damages for negligent misrepresentation. *Jenkins*, 308 F.3d at 858. However, the Eighth Circuit concluded that those incentive and severance awards represented the benefit of the bargain, and "Missouri law bars [plaintiff] from recovering the benefit-of-the-bargain damages he seeks for the alleged negligent misrepresentation . . . ." *Id.* at 859.

In light of the case law discussed above, the Court cannot but conclude that the Trust is entitled to only its pecuniary losses—the difference between what it paid to acquire the interest in the Policy ($320,000) and the value that the Policy actually had ($403,340.01). Because the Trust did not lose any money at all, but instead profited by more than $80,000 from its purchase of the Policy despite Omaha's negligent misrepresentation, the Trust did not incur any damages.

## V. CONCLUSION

For the reasons discussed above, on the basis of the stipulated facts, the Trustee's motion for summary judgment on Count V, Doc. 32, is DENIED, and Omaha's motion for summary judgment on Count V, Doc. 34, is GRANTED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: January 24, 2022
Jefferson City, Missouri